IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

KAMEKO R. WILLIAMS, as the natural daughter
and next friend of JAMES LEE BROWNLEE, deceased AND
ON BEHALF of all of the heirs-at-law and wrongful
death beneficiaries of JAMES LEE BROWNLEE, deceased          PLAINTIFF

VS.                                              CIVIL ACTION NO. 1:18-CV-128-GHD-DAS

PATROLMAN ADAM ZACHARY, et al.                               DEFENDANTS

OPINION GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Presently before the Court are the Defendants' separate motions for summary judgment [111, 115] – one filed by Defendant Patrolman Adam Zachary, and one filed by the remaining Defendants. Upon due consideration, the Court finds that the motions should be granted.

### A. *Factual and Procedural Background*

On July 4, 2016, at approximately 9:00 p.m., the Decedent James Brownlee was arrested by Defendant Highway Patrolman Zachary at a safety checkpoint for DUI, driving with a suspended license, lack of insurance, possession of alcohol in a dry county, and a seatbelt violation.[1] [Plaintiff's Second Amended Complaint, Doc. 60, at p. 5; Booking Report, Doc. 111-2]. After his arrest and prior to his arrival at the Chickasaw County Regional Correctional Facility, Brownlee raised two issues with Zachary: first, that Brownlee's wrists were hurting from the handcuffs and, subsequently, that his back was hurting [Zachary Dep., Doc. 115-3, at pp. 35-36, 140]. In response to Brownlee's first complaint, Zachary released the handcuffs from behind Brownlee's back and recuffed Brownlee's hands in the front [*Id*. at pp. 36, 140]. In response to

---

[1] Brownlee was a 57-year-old African-American male who worked full-time at a furniture factory in Houlka, Mississippi [K. Williams Dep., Doc. No. 115-1, at p. 7]. He was, by all accounts, in good health and had not indicated any sort of medical issues during the time period preceding his death [Doc. 115-1, at p. 7; L. Brownlee Dep., Doc. No. 115-2, at pp. 15-16, 26, 42].

1

Brownlee's complaint that his back was hurting, he was permitted to get out of the patrol car to stretch his legs; upon arrival at the jail, he raised no further complaints regarding back pain [*Id*. at pp. 35-6, 96]. At 10:27 p.m. that same night, after a breathalyzer test indicated his breath alcohol content was 0.15, nearly twice the legal limit, Brownlee was booked into the custody of the Chickasaw County Regional Correctional Facility by the Defendant Deputy Cody Shankle [Jail Booking Report, Doc. 111-2]. During Mr. Brownlee's booking process at the jail, he did not indicate any pain, discomfort, or underlying medical conditions to Deputy Shankle; Brownlee further indicated on the jail's Health & Observation intake form that he had no heart conditions or hypertension, was not taking any medication, and had no serious medical problems – the sole medical condition he indicated was arthritis [Doc. 111-2, at 20; Health & Observation Form, Doc. 119-6]. Subsequently during the booking process, Brownlee relayed to Deputy Shankle that his stomach was hurting and he asked to use the restroom; following the restroom break, Brownlee did not further indicate to Shankle or any other jail personnel that he was in any pain or having any medical issues, and he was escorted to a holding cell [Doc. 111-2, at 24; Shankle Dep., Doc. 111-5, at p. 108]. At 1:40 a.m. on the morning of July 5, Deputy Shankle escorted Brownlee from the holding cell to a single cell; Brownlee did not mention any medical issues during this movement and did not require any assistance during the movement or appear to be in any medical distress [*Id*.].[2]

Beginning at 2:00 a.m. on July 5, Brownlee was visually observed by jail personnel an average of every 34 minutes [Inmate Security Check Log, Doc. 111-3]. At 5:40 a.m., Deputy Shankle came to Brownlee's cell to give him his breakfast tray [Doc. 111-2, at 24]. When Brownlee failed to respond, Shankle entered the cell and found Brownlee unresponsive [*Id*.].

---

[2] Video footage from inside the jail shows Brownlee during the booking process interacting with jail personnel, including Deputy Shankle, and in the holding cell. [Video Footage, Doc. 131; Doc. 111-5, at pp. 106-23].

Shankle then made a "Code Blue" emergency radio call [*Id*.] Several officers and medical personnel responded, a defibrillator was brought in the cell, CPR was initiated, and an ambulance was paged [*Id*.]. Paramedics arrived and CPR efforts were continued until shortly after 6:00 a.m. [*Id*.] Mr. Brownlee was pronounced dead at 6:28 a.m. with the cause of death listed as hypertension and arthroscopic vascular disease [Certificate of Death, Doc. No. 111-1].

The Plaintiff subsequently filed this action pursuant to Section 1983, alleging that Defendants State Trooper Zachary and Deputy Shankle, both sued solely in their individual capacities, and the Defendant Sheriff Myers, sued solely in his official capacity, the Defendant Chickasaw County Sheriff's Department, and the Defendant Chickasaw County violated Brownlee's Fourteenth Amendment right to adequate medical care; the Plaintiff further alleges that the Defendant Zachary violated Brownlee's Fourth Amendment right to be free from unlawful seizure, arrest, and imprisonment [Doc. 60, at pp. 12-14]. The Defendants then filed the instant motions pursuant to Rule 56 of the Federal Rules of Civil Procedure, asserting that the Plaintiff's claims against them should be dismissed.

### B. Standard of Review

#### 1. Summary Judgment

This Court grants summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). When the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

## 2. Qualified Immunity

Defendants Zachary and Shankle have asserted that they are protected from liability by the doctrine of qualified immunity. "[Q]ualified immunity serves to shield … government officials from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *Thompson v. Upshur County, Texas*, 245 F.3d 447, 456 (5th Cir. 2001); see *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) ("Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right.") (quoting *Mace v. City of Palestine, Tex.*, 333 F.3d 621,

4

623 (5th Cir. 2003)). Qualified immunity calls for a bifurcated test in which the court must first determine (1) "whether the plaintiff has alleged a violation of a clearly established statutory or constitutional right that was clearly established at the time of the challenged conduct and, if so, (2) whether the defendant [official's] conduct was objectively unreasonable." *Ashcroft v. al–Kidd*, 563 U.S. 731 (2011); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "Once a defendant asserts the qualified immunity defense, '[t]he plaintiff bears the burden of negating qualified immunity.'" *Id.* (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). "Despite this burden-shifting, all reasonable inferences must be drawn in the non-movant plaintiff's favor." *Id.* (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

Importantly, a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. *Ashcroft*, 563 U.S. at 741. In other words, "existing precedent must have placed the statutory or constitutional question" confronted by the official "beyond debate." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). The U.S. Supreme Court has thus stressed that a plaintiff's burden of demonstrating that defendants violated "clearly established law" requires not merely a citation to generalized principles of law, but, rather, specific authority which "placed the statutory or constitutional question" confronted by the official "beyond debate." *Id.* The Fifth Circuit has similarly written that, in the qualified immunity context, "[w]e do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden on plaintiffs." *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997). Making the plaintiff's burden in this context even more difficult, the Supreme Court wrote in *City and County of San Francisco v. Sheehan*, 575 U.S. 600 (2015), that, to establish that any supportive precedent was "clearly established," the plaintiff must be able to cite either a

5

decision from that Court or a "robust consensus of cases of persuasive authority in the Courts of Appeals." See also *Crawford v. Desoto Cty. Sheriff's Dep't*, No. 3:19CV013-MPM-RP, 2020 WL 55611, at *4 (N.D. Miss. Jan. 6, 2020).

### 3. Municipal Liability

Under *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978) and its progeny, a municipality may only be held liable under 42 U.S.C. § 1983 for violating a citizen's constitutional rights if "the governmental body itself 'subjects' [that] person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51 (2011). Governmental entities are "responsible only for [their] own illegal acts" and are "not vicariously liable under § 1983 for [their] employees' actions." *Id.* Thus, there is no respondeat superior liability under § 1983; rather, the key to municipal liability is demonstrating that a deprivation of a constitutional right was inflicted pursuant to an official policy or custom of the municipality in question. *Monell*, 436 U.S. at 694. The alleged unconstitutional conduct asserted "must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

To establish constitutional liability under *Monell*, a plaintiff must therefore demonstrate (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247-249 (5th Cir. 2003). A "policy or custom" can be either (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated

policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *McGregory v. City of Jackson*, 335 Fed. App'x 446, 448-449 (5th Cir. 2009); *Crawford v. Desoto Cty. Sheriff's Dep't*, No. 3:19CV013-MPM-RP, 2020 WL 55611, at *5 (N.D. Miss. Jan. 6, 2020).

A "single incident" exception to the *Monell* standard exists, and liability may be appropriate in a narrow range of circumstances, when proof is presented demonstrating that the need for more or specific systemic training in a particular area is so obvious, and the inadequacy of the present level of training is so likely to result in a constitutional violation, that the relevant policymakers may reasonably be deemed to be deliberately indifferent to the need for the training. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). In order to establish liability under this exception, the failure to train officers must "amount to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388.

### C. Analysis and Discussion

**1. Defendant Zachary and Defendant Shankle's Motions for Qualified Immunity**

*a. Plaintiff's Claims for Denial of Medical Care*

The Plaintiff asserts that Defendants Zachary and Shankle violated Brownlee's right under the Fourteenth Amendment to adequate medical care as a pretrial detainee. Under the Fourteenth Amendment, "pretrial detainees are entitled to reasonable medical care unless the failure to supply that care is reasonably related to a legitimate governmental objective." *Little v. Keirsey*, 69 F.3d 536 (5th Cir. 1995).

To state a claim for the unconstitutional denial of medical care in a case such as the one *sub judice*, a plaintiff must show that an officer's actions or omissions were deliberately indifferent to a substantial risk of serious medical harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994);

7

*Wagner v. Bay City, Texas*, 227 F.3d 556, 561 (5th Cir. 2000). To demonstrate deliberate indifference, the Plaintiff must show that the officer "knows of and disregards an excessive risk to inmate safety." *Garza v. City of Donna*, 922 F.3d 626, 635-36 (5th Cir. 2019).

The Fifth Circuit, in *Batiste v. Theriot*, 458 Fed. App'x 351 (5th Cir. 2012), addressed a similar case. In *Batiste*, the plaintiff died a short time after being shot with a taser in a foot pursuit with police; his family sued the involved officers, alleging excessive force and the denial of medical care. The Fifth Circuit held that the on-scene officers were entitled to qualified immunity and had not acted with deliberate indifference to the plaintiff's clear medical needs because the officers at the scene never thought that "there was a serious medical emergency" and that the officers followed departmental policy regarding the procuring of medical care. *Batiste*, 458 Fed. App'x at *4-*5. Likewise, a court in this district, in granting the defendant officers' motion for qualified immunity in a similar case involving a detainee who died in her sleep in the Lafayette County jail forty-eight hours after her arrest, noted that officers "are not constitutionally required to detect hidden physical or psychiatric problems which would generally require the diagnostic skills of a medical professional" and that absent awareness that "the detainee suffers from some outwardly apparent and obviously serious medical condition," qualified immunity is appropriate. *Boston v. Lafayette County*, 744 F. Supp. 746, 754 (N.D. Miss. 1990). In granting the officers' motion for qualified immunity, the *Boston* court was faced with facts arguably more severe than those present in this case – the officers in that case failed to complete a medical screening form during booking, which was accomplished in the case *sub judice*, and the decedent detainee had known mental health issues, suffered from diabetes, and appeared physically ill or disoriented to the officers. *Id*. at 749. The *Boston* court noted that while the decedent in that case gave no indication to officers that she was in pain or wished for medical attention, she suffered from mental

8

illness, had ingested insulin, and made grunting sounds and was holding her abdomen when she arrived at the jail. *Id*. The decedent died in her cell from a blood clot approximately forty-eight hours after her arrival at the jail. *Id*. The court ultimately held that qualified immunity was appropriate. *Id*.

Here, likewise, there is no evidence that the Defendants Shankle, Zachary, or any other involved officer acted with deliberate indifference to Brownlee's medical needs. Indeed, there is no evidence that it was clear, upon outward observation, that Brownlee required any medical attention or treatment or that he suffered from an outwardly apparent and obviously serious medical condition. Brownlee, although obviously intoxicated, was capable of communicating with officers, and indicated during booking that he had no heart conditions or hypertension, was not taking any medication, and had no serious medical problems – his sole complaint related to stomach pain and the need to use the bathroom, which he was allowed to do; after that, he did not advise anyone of any pain or medical issues, and the record is clear that he did not outwardly appear to have any obviously serious medical issues [Doc. 111-2]. The Plaintiff's deposition testimony likewise reveal that neither Mr. Brownlee's wife nor his daughter, both of whom were with Brownlee when he was arrested, heard him complain of any pain to Patrolman Zachary during the traffic stop or arrest. [Doc. 115-1, at pp. 12-13; Doc. 115-2, at p. 41].

The primary case upon which the Plaintiff seeks to rely, *Dyer v. Houston*, 964 F.3d 374 (5th Cir. 2020), is clearly distinguishable. In *Dyer*, the Fifth Circuit held that a genuine issue of material fact existed regarding the defendant officers' entitlement to qualified immunity when the decedent detainee had struck his head violently against the interior metal cage and window of a patrol car over forty times *en route* to jail during a drug-induced psychosis and had sustained serious and outwardly obvious head trauma as a result; the detainee died a few hours later from

9

cranial trauma. *Id*. at 381-82. The officers in *Dyer* had witnessed the trauma and had subjective knowledge of the decedent detainee's injuries and the cause of those injuries – rather than seek medical care, however, the officers simply told jail personnel that the decedent detainee had been medically cleared at the scene. *Id*.

The facts in the case *sub judice* are simply nowhere near as stark as those in *Dyer*, and the Plaintiff has not shown that Zachary or Shankle's actions or omissions were deliberately indifferent to a substantial risk of serious medical harm or that either of them knew of and disregarded an excessive risk to Brownlee's safety or health. As noted above, Brownlee indicated no serious health issues during his arrest or booking; his sole complaint during booking was that his stomach hurt and he needed to use the restroom – he subsequently had no complaints and, although clearly intoxicated, did not appear to be in any serious or obvious medical distress. Officers later moved him from a holding cell to an individual cell, and then observed him every half hour throughout the night until his untimely passing. Based on these undisputed facts, the Plaintiff has not shown that either Zachary or Shankle were deliberately indifferent to Brownlee's clear medical needs nor that either of them acted in an objectively unreasonable manner regarding Brownlee's medical needs.

For these reasons, the Court finds that the Plaintiff has not established that either Zachary or Shankle violated a clearly established statutory or constitutional right regarding Brownlee's right under the Fourteenth Amendment to adequate medical care as a pretrial detainee, or that their conduct was objectively unreasonable. Zachary and Shankle are therefore entitled to qualified immunity and their separate motions for summary judgment as to these claims shall be granted.

> b. *Plaintiff's Claims for Unlawful Seizure, Arrest, and False Imprisonment*

The Plaintiff alleges that the Defendant Zachary violated Brownlee's rights under the Fourth and Fourteenth Amendments to be free from unlawful seizure, arrest, and false imprisonment [Doc. 60, at pp. 13-14].

First, the Plaintiff avers that the traffic stop that resulted in Brownlee's arrest was impermissible. The Court disagrees. Traffic checkpoints are seizures implicating the Fourth Amendment. *Michigan Dep't of State Police v. Sitz,* 496 U.S. 444, 450, 455 (1990); see also *United States v. Martinez–Fuerte,* 428 U.S. 543, 566–67 (1976) ("It is agreed that checkpoint stops are 'seizures' within the meaning of the Fourth Amendment."). While roadblock or checkpoint traffic stops are seizures within the meaning of the Fourth Amendment, checkpoints which stop all oncoming vehicles with the purpose of checking for traffic violations are permissible. *City of Indianapolis v. Edmond,* 531 U.S. 32 (2000); *United States v. Atkinson*, 248 F.3d 1139 (5th Cir. 2001).

When there is an argument that a checkpoint stop amounted to an impermissible search and seizure under the Fourth Amendment, the analysis first set forth by the Supreme Court in *Delaware v. Prouse,* 440 U.S. 648, 663 (1979), is implicated. In *Prouse*, the Court invalidated a discretionary, suspicionless stop for a spot check of a single motorist's license and registration; however, the Court indicated that "[q]uestioning of all oncoming traffic at roadblock-type stops" to verify driver's licenses and registrations would be a lawful means of furthering the state's vital interest in highway safety. *Id.;* see also *City of Indianapolis,* 531 U.S. at 39 (2000) (noting same). In addition, in Mississippi, roadblocks or checkpoints where all incoming traffic is stopped for a driver's license check have been found permissible under the Fourth Amendment. *Miller v. State,* 373 So.2d 1004, 1005 (Miss. 1979); *Collins v. Ainsworth*, 382 F.3d 529, 538 (5th Cir. 2004). The

11

Supreme Court, in *Brown v. Texas,* 443 U.S. 47 (1979), further articulated the balancing test used to determine the reasonableness of warrantless checkpoint stops: "Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizures, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Id.* at 50–51. In other words, the checkpoint will be subject to a balancing test to determine whether it is constitutionally permissible - weighing the public interest, if any, advanced by the checkpoint against the Defendant's protected privacy and liberty interests. *Collins*, 382 F.3d at 537–39.

In the case *sub judice*, Trooper Zachary testified in his deposition that the subject checkpoint, set up on July 4, 2016, on Highway 389 near the Natchez Trace, stopped all vehicles that passed and was established in order to check for driver's licenses, insurance, and to ensure vehicle safety [Doc. 115-3, at pp. 28-9]. Because the Plaintiff has not presented any evidence to contradict this testimony, the Court finds that the checkpoint was properly authorized and was established for a permissible purpose - the checkpoint was properly authorized and established; was operated in a manner consistent with the public interest in enforcing licensing, insurance, and motor vehicle laws; and properly limited the on-site officers' discretion because every vehicle that approached the checkpoint was stopped. In addition, the Court finds that brief nature of the stop at the checkpoint for the limited purpose of verifying drivers' licenses, proof of insurance, and for safety observation was a reasonable intrusion into the passing motorists' protected privacy and liberty interests. *Atkinson*, 248 F.3d 1139 (5th Cir. 2001).

Next, the Plaintiff argues that Zachary arrested Brownlee without probable cause. The lack of probable cause is a necessary component of a false arrest and imprisonment claim. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010); *Deville v. Marcantel*, 567 F.3d 156,

12

164 (5th Cir. 2009) (holding that "[i]f there was probable cause for **any** of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails.")(emphasis added); *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) ("The 'constitutional torts' of false arrest, unreasonable seizure, and false imprisonment . . . require s showing of no probable cause."). Probable cause exists "when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Curtis v. Anthony*, 710 F.3d 587, 595 (5th Cir. 2013).

In the case *sub judice*, it is undisputed that upon approaching the driver's side of the Brownlees' van, Zachary noticed the strong odor of alcohol [Doc. 115-3, at p. 33]. This alone gave Zachary sufficient reasonable suspicion to detain Brownlee for further investigation. *Watts v. State*, 78 So. 3d 901, 904 (Miss. 2012). Further, it is undisputed that Brownlee was in possession of alcohol in the vehicle [Doc. 115-2, at p. 39; Doc. 115-3, at p. 105] and that Chickasaw County is a "dry" county, rendering possession of alcohol unlawful in that county. Miss. Code Ann. § 67-3-13; Mississippi Dep't of Revenue Alcoholic Beverage Control Division map at https://www.dor.ms.gov/ABC/Pages/WetDryMap-Beer-Wine.aspx; *Dantzler v. State*, 542 So. 2d 906, 909 (Miss. 1989). In addition, Brownlee admitted to driving the vehicle, failed a field sobriety test at the scene, and then registered a breath alcohol content nearly twice the legal limit [Doc. 115-3, at p. 34; Doc. 115-4]. Based on these undisputed facts, the Court finds that probable cause existed for Zachary to arrest Brownlee and transport him to the jail for booking. *Deville*, 567 F.3d at 164; *Winston v. City of Shreveport*, 390 F. App'x 379, 384 (5th Cir. 2010); *see* Miss. Code Ann. § 45-3-21 (Mississippi Highway Patrolmen possess authority to effect warrantless arrest of any person committing or attempting to commit misdemeanor in presence or view of Patrolman).

For these reasons, the Court finds that the Plaintiff has not established that Zachary violated a clearly established statutory or constitutional right regarding Brownlee's rights under the Fourth and Fourteenth Amendments to be free from unlawful seizure, arrest, and false imprisonment, or that Zachary's conduct was objectively unreasonable. Zachary is therefore entitled to qualified immunity and his motion for summary judgment as to these claims shall be granted.

### 2. Chickasaw County Defendants' Motion for Summary Judgment

The Plaintiff asserts that the Defendant Sheriff Myers, sued in his official capacity, the Defendant Chickasaw County Sheriff's Department, and the Defendant Chickasaw County violated Brownlee's Fourteenth Amendment right to medical care.

Brownlee was transported by Mississippi Highway Patrolman Adam Zachary to the Chickasaw County Detention Center at approximately 9:30 p.m. on July 4, 2016, after Zachary arrested Brownlee for, *inter alia*, DUI and possession of alcohol in a dry county. Once Brownlee arrived at the jail, he was booked into the facility by Defendant Deputy Cody Shankle.

As noted above, in order to establish the subject Defendants' liability in this case, the Plaintiff must normally identify a policy or custom that caused or was the moving force behind the complained-of constitutional deprivation. *Monell*, 436 U.S. at 694. Isolated incidents are not sufficient to demonstrate that a policy exists. See *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) (en banc) (holding that "[i]solated violations are not the persistent, often repeated, constant violations that constitute custom and policy"); *Estate of Pernell v. City of Columbus*, No. 1:08CV40-D-D, 2010 WL 1737638 (N.D. Miss. Apr. 28, 2010). To show that the right to medical care has been violated, a plaintiff must demonstrate that an official had subjective knowledge of a substantial risk of serious harm to the plaintiff, and the subject official(s) responded with deliberate indifference. *Id*. (citing *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996).

In this case, however, the Plaintiff has elected to rely solely on the above-noted "single incident" exception to the *Monell* standard, which is appropriate only in a narrow range of circumstances and which requires proof (here, proof that a genuine issue of material fact exists) demonstrating that a systemic need for more or specific training in a particular area is so obvious, and the inadequacy of the provided training is so likely to result in a constitutional violation, that the relevant policymakers may reasonably be deemed to be deliberately indifferent to the need for the subject training. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Specifically, as noted above, in order to establish liability under this exception, the failure to train officers in the subject area must "amount to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388.

In the case *sub judice*, the Court finds that the Plaintiff has not presented sufficient evidence to demonstrate that a genuine issue of material fact exists regarding this claim. To the contrary, the evidence shows that Chickasaw County deputies who work at the jail, as well as Defendant Deputy Shankle himself, are required to receive training regarding inmate medical assessment and emergencies, and that Deputy Shankle conducted a medical assessment with Brownlee upon Brownlee's arrival at the jail [Doc. 119-5, at p. 25; Doc. 119-6; Doc. 119-9]. Shankle and Brownlee completed the required medical Health & Observation form, and Brownlee signed the form indicating no serious health conditions or problems, other than noting Brownlee was under the influence of alcohol and had pre-existing arthritis [Doc. 119-6]. Nothing in the record indicates a systemic failure to provide officers with training related to inmate medical assessment, and certainly not to the level required to invoke the single incident exception to *Monell*.

Given these undisputed facts, the Court finds that the Chickasaw County Defendants did not fail to train their officers nor respond with deliberate indifference to Brownlee's constitutional

15

rights. Accordingly, municipal liability cannot be imposed under *Monell* or the single incident exception to the customary *Monell* test. The Court thus holds that no genuine issue of material fact remains as to this claim, and the Chickasaw County Defendants are entitled to judgment as a matter of law.

### D. Conclusion

For the foregoing reasons, the Court finds that the Defendant Zachary is entitled to qualified immunity as to the Plaintiff's claims pending against him. Accordingly, Zachary's motion for summary judgment shall be granted and the Plaintiff's claims against him dismissed. Likewise, the Court finds that the Defendant Shankle is entitled to qualified immunity as to the Plaintiff's claim pending against him, and Shankle's motion for summary judgment shall therefore be granted and the Plaintiff's claim against him dismissed. The Court further finds that the Defendant Sheriff Myers, sued in his official capacity, the Defendant Chickasaw County Sheriff's Department, and the Defendant Chickasaw County are entitled to summary judgment as to the Plaintiff's pending claims against them. Their motion for summary judgment shall therefore be granted and the Plaintiff's claims against them dismissed.[3]

An order in accordance with this opinion shall issue this day.

THIS, the 27th day of August, 2021.

_____
SENIOR U.S. DISTRICT JUDGE

---

[3] Defendant Deputy Sheriff Diana Westmoreland, sued solely in her individual capacity, was never served with process. The Court previously dismissed the Plaintiff's claims against Westmoreland for failure to timely effect service of process [32]. The Plaintiff subsequently filed an Amended Complaint [60], again naming Westmoreland as a Defendant in her individual capacity; the Plaintiff, however, never served Westmoreland with process. The Plaintiff's claims against Westmoreland, therefore, are hereby dismissed.